CITY OF BRENHAM v. HOLLE & SEELHORST.

(Court of Civil Appeals of Texas.  San Antonio.
Jan. 8, 1913.  On Motion for Rehearing, Feb. 5, 1913.)

1. MUNICIPAL CORPORATIONS (§ 111*)—ORDINANCES—CONFORMITY TO STATUTORY PROVISIONS.

An ordinance in pursuance of a legislative grant of authority need not be in the language of the statute, nor exercise all the granted power.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 245–256; Dec. Dig. § 111.*]

2. MUNICIPAL CORPORATIONS (§ 57*)—GOVERNMENTAL POWERS—IMPLIED POWERS.

Municipal corporations possess the powers expressly granted, those necessarily or fairly implied in or incident to powers expressly granted and those essential to declared objects and purposes of the corporation, not simply convenient, but indispensable.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 144, 148; Dec. Dig. § 57.*]

3. MUNICIPAL CORPORATIONS (§ 61*)—GOVERNMENTAL POWERS — CONSTRUCTION OF CHARTER AND STATUTORY PROVISIONS.

The extent of municipal powers is a question of construction, and, while such construction should give fair effect to a legislative intent, any ambiguity or reasonable doubt is to be resolved against the grant; but the rule of strict construction does not apply to the mode adopted by a municipality to carry into effect powers expressly or plainly granted, where the mode is not limited or prescribed by the Legislature.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 152; Dec. Dig. § 61.*]

4. MUNICIPAL CORPORATIONS (§ 603*) — POLICE POWER—ORDINANCES—FIREPROOF MATERIALS.

Under Rev. St. 1895, art. 523, authorizing cities to require all buildings within fire limits to be of fireproof materials, and article 533, authorizing such municipal regulations for the prevention of fires as are deemed expedient, an ordinance requiring buildings within the fire limits to have walls and roofs "constructed of fireproof material" was beyond the power granted because of the specification of materials to be used.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1334; Dec. Dig. § 603.*]

5. MUNICIPAL CORPORATIONS (§ 58*)—GOVERNMENTAL POWERS—STATUTES.

Unless a city charter contains an express power to enact an ordinance, which is arbitrary and unreasonable, it should be held that it was not the intention to confer authority to enact such an ordinance.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 145–147; Dec. Dig. § 58.*]

6. MUNICIPAL CORPORATIONS (§ 122*)—ORDINANCES — BURDEN OF PROOF — UNREASONABLENESS.

Where the unreasonableness of an ordinance is relied upon to have it declared void, the burden is upon the party attacking it to prove the facts making it invalid.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 281–289; Dec. Dig. § 122.*]

7. TRIAL (§ 141*)—ORDINANCES—VALIDITY—QUESTION FOR JURY.

Where the facts alleged to render an ordinance invalid for unreasonableness are controverted, they must be determined by jury; but whether such facts show the ordinance to be unreasonable is a question for the court.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 336; Dec. Dig. § 141.*]

8. MUNICIPAL CORPORATIONS (§ 603*) — POLICE POWER—ORDINANCES—"FIREPROOF MATERIALS."

Under an ordinance requiring buildings within the fire limits to have their walls and roofs constructed of fireproof material, using for walls brick, stone, or concrete, and for roofs tin, slate or iron, sheet iron covering on a wooden frame for the walls of a building was not within the term "fireproof materials."

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1334; Dec. Dig. § 603.*

For other definitions, see Words and Phrases, vol. 3, p. 2818.]

9. MUNICIPAL CORPORATIONS (§ 625*) — POLICE POWER—CONSTRUCTION OF BUILDINGS—REASONABLENESS OF ORDINANCE.

An ordinance requiring buildings within the fire limits to have their walls and roofs constructed of fireproof material, using for the walls brick, stone, or concrete, and for the roofs tin, slate, or iron, was reasonable in its discrimination against materials.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1378, 1379; Dec. Dig. § 625.*]

10. MUNICIPAL CORPORATIONS (§ 625*) — POLICE POWER — ORDINANCES — QUESTION OF REASONABLENESS.

Where an ordinance is not unreasonable on its face, the question may depend upon its operation upon particular conditions of fact, and its effect may be just and reasonable in general, but arbitrary in the particular instance.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1378, 1379; Dec. Dig. § 625.*]

On Motion for Rehearing.

11. MUNICIPAL CORPORATIONS (§ 603*) — POLICE POWER—ENJOINING CONSTRUCTION OF BUILDING—JUDGMENT.

Under an ordinance requiring the walls of buildings within the fire limits to be of fireproof material, using brick, stone, or concrete for walls, and the roofs to be of tin, slate, or iron, only the sheet iron and wooden frame walls of a building whose foundation is of brick, and whose roof is of sheet iron metal, will be required to be taken down and removed.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1334; Dec. Dig. § 603.*]

Appeal from District Court, Washington County; Ed R. Sinks, Judge.

Action by the City of Brenham against Holle & Seelhorst.  Judgment for defendants, and plaintiff appeals.  Reversed and rendered for plaintiff.

Thos. B. Botts, of Brenham, for appellant.
W. W. Searcy, of Brenham, for appellees.

MOURSUND, J.  Appellant, the city of Brenham, sued appellees to enjoin them from continuing the construction of a building within the fire limits of the city of Brenham,

and to have them remove and take down that portion of said building which had been erected by them. It was alleged that said building was being constructed of material not fireproof, using wood and galvanized iron for walls of the same, contrary to ordinances, which were pleaded. Ordinance No. 111 established the fire limits. No. 112 prohibited wooden buildings within said limits. No. 113 reads as follows: "Construction of buildings erected within.—Each and every building of every kind or size erected by any person within said limits, shall have its walls and roofs constructed of fireproof material, using for walls, brick, stone or concrete and roofs of tin, slate or iron." No. 114 relates to repairs of wooden buildings. No. 115 reads as follows: "Any person who shall violate the provisions of ordinances 112 and 113, shall on conviction before the recorder, be fined in any sum not exceeding $100.00. Every day that such person shall work upon such building, or permit the same to remain standing after completion thereof, shall constitute an offense within the meaning of this chapter." It was also alleged that said building greatly jeopardized, endangered, and exposed to fire adjacent buildings and those in the vicinity thereof, and will increase the rate of insurance on said buildings by reason of its construction not being fireproof, and that said building constitutes a nuisance. The defendants answered by demurrer, general denial, and allegation that the building in question was a fireproof building. Upon a trial before the court judgment was rendered for defendants, from which the city of Brenham appealed.

The trial court filed findings of facts as follows: "The city of Brenham is, and was, incorporated under the articles of the Revised Statutes with reference to the incorporation of towns and cities containing less than 10,000 population. Prior to the matters complained of in plaintiff's petition, the city, by ordinance, established fire limits in said city as set out in plaintiff's petition. The city passed an ordinance, described in plaintiff's petition as follows: 'Ordinance No. 113. —Each and every building of every kind or size erected by any person, within said limits, shall have its walls and roofs constructed of fireproof material, using for walls, brick, stone or concrete, and roofs of tin, slate or iron.' Which ordinance had reference to the erection of buildings within the fire limits established by the city, and took effect on the 4th day of March, A. D. 1911. The affidavit of the publication of said ordinance was made on the 6th day of September, A. D. 1911, after this suit was brought. Ordinance No. 115, described in plaintiff's petition, made it an offense, punishable by fine of $100, for violation of said ordinance. The defendants on the lot described in said petition, and within the fire limits of said city, after having been notified not to do so by the mayor of the plaintiff, did erect thereon a small building in the nature of a shed room, the south wall of which was the brick wall of the adjoining building, and the remainder being of sheet iron on the outside; the framework being wooden studdings set upon a brick foundation. There were two openings to said building, one on the east and one on the north, which were also covered on the outside by sheet iron. The roof of said building was also made of sheet iron." The court concluded that ordinance No. 113 was in conflict with article 523 of the Revised Civil Statutes of 1895, in so far as it designated the materials out of which buildings should be constructed, and that the material used in the building in question was fireproof material—that is, such as would exclude or resist ordinary fires—wherefore he held that the defendant was entitled to judgment. The learned trial judge was of the opinion that by said article 523 the city was only authorized to pass an ordinance forbidding the erection of buildings within the fire limits not made of fireproof material.

By appropriate assignments appellant attacks the finding that the material used in the building in question was fireproof material—that is, such as would exclude or resist ordinary fires—and the conclusion of law that the city had exceeded its authority in passing said ordinance 113. The validity of ordinances, like the one in question, passed pursuant to said article 523, has not been passed upon by any of our courts so far as we are informed or can ascertain, except by the Court of Criminal Appeals, in which their validity was sustained by a divided court. Ex parte Morris, 56 Tex. Cr. R. 533, 120 S. W. 1007. Article 523 reads as follows: "The city council, for the purpose of guarding against the calamities of fire, may prohibit the erection, building, placing, moving or repairing of wooden buildings within such limits within said city as they may designate and prescribe; and may within said limits prohibit the moving or putting up of any wooden building from without said limits, and may also prohibit the removal of any wooden building from one place to another within said limits, and may direct, require and prescribe that all buildings within the limits so designated and prescribed as aforesaid shall be made or constructed of fireproof materials, and to prohibit the rebuilding or repairing of wooden buildings within the fire limits when the same shall have been damaged to the extent of fifty per cent. of the value thereof, and may prescribe the manner of ascertaining such damage; may declare all the dilapidated buildings to be nuisances and direct the same to be repaired, removed or abated in such manner as they shall prescribe and direct; to declare all wooden buildings in the fire limits which they deem dangerous to contiguous buildings, or in causing or promoting fires, to be nuisances, and require and cause the same to be removed in such manner as they shall prescribe." The succeeding arti-

cles authorized the city council to prevent and prohibit the dangerous condition of chimneys, flues, fireplaces, stoves, ovens, or other apparatus used in or about any building; to prevent deposits of ashes; to appoint officers to inspect premises; to require the inhabitants to keep and provide fire buckets and ladders; to regulate or prevent the carrying on of manufactories and works dangerous in promoting or causing fires; to prohibit or regulate the building of cotton presses and sheds; to regulate or prevent and prohibit the use of fireworks and firearms; to direct, control, or prohibit the keeping and management of houses or any buildings for the storing of gunpowder and other combustible, explosive, or dangerous materials; to regulate the keeping and conveying of the same; to regulate and prescribe the manner and to order the building of parapet and party walls; to compel the owners or occupants of houses or other buildings to have scuttles in the roof and stairs or ladders leading to the same; to authorize the mayor or other officers or fire officers to keep away from the vicinity of any fire all idle, disorderly, and suspicious persons, and arrest and imprison the same; and to compel all officers of the city and all other persons to aid in the extinguishment of fires and the preservation of property. Then follows article 533, as follows: "And generally to establish such regulations for the prevention and extinguishment of fires as the city counsel may deem expedient." Article 534 authorizes the procurement of fire engines and other apparatus, and the organization of fire companies. Article 535 authorizes the destruction of a building when necessary to prevent the spreading of fire. All of the above provisions are a part of the act of March 15, 1875 (Laws 1875, c. 100), providing for the incorporation of cities and towns of 1,000 inhabitants or over. It is evident that in making such provisions the Legislature intended a liberal grant of power to cities and towns with respect to the prevention of loss by fire. Article 523 authorizes an ordinance requiring and directing that all buildings within the fire limits be made or constructed of fireproof materials.

[1] We do not understand that when a grant of power is made by the Legislature, an ordinance in pursuance thereof must be in the very language of the statute, nor that all the power contained in such grant must necessarily be exercised. Where authority is given to require the entire building to be made of fireproof materials, an ordinance requiring the walls alone to be made of such material would be authorized because it would not exceed the grant of authority. But the question is whether an ordinance requiring the walls to be built of certain materials does not exceed the power given by a grant permitting the requirement of fireproof materials. The statute does not expressly authorize the adoption of an ordinance specifying the materials to be used in the construction of buildings, nor is it necessary that such power be expressly given.

[2] A municipal corporation possesses and can exercise the following powers, and no others: (1) Those granted in express words; (2) those necessarily or fairly implied in, or incident to, powers expressly granted; (3) those essential to declared objects and purposes of the corporation, not simply convenient, but indispensable. Dillon on Municipal Corporations (5th Ed.) § 237; Williams v. Davidson, 43 Tex. 33; Brenham v. Water Co., 67 Tex. 542, 4 S. W. 143. Dillon, in section 238, quotes, with approval, from the case of Bridgeport v. Housatonuc R. R. Co., 15 Conn. 475, the following: "In this country all corporations, whether public or private, derive their powers from legislative grant, and can do no act for which authority is not expressly given, or may not reasonably be inferred. But, if we were to say that they can do nothing for which a warrant could not be found in the language of their charters, we should deny them in some cases the power of self-preservation, as well as many of the means necessary to effect the essential objects of their incorporation. And therefore it has long been the established principle in the law of corporations that they may exercise all the powers within the fair intent and purpose of their creation which are reasonably proper to give effect to powers expressly granted. In doing this they must (unless restricted in this respect) have a choice of means adapted to ends, and are not to be confined to any mode of operation." "It is seldom that a rule other than that of strict construction is applied or should be applied, to powers of whatever nature exercised or attempted to be exercised by a public corporation." Abbott on Municipal Corporations, § 113. "The rule of strict construction as given in the preceding section is occasionally modified. The courts hold that the rule should not be carried to such an extent as to defeat the very purpose for which the power was granted, if proper to be exercised, and that, where it is necessary to adopt a more liberal rule of construction of a corporate power to accomplish the result sought by the Legislature, it should be done."

[3] Dillon, § 239, says: "The extent of the powers of municipalities, whether express, implied, or indispensable, is one of construction. And here the fundamental and universal rule, which is as reasonable as it is necessary, is that while the construction is to be just, seeking first of all for the legislative intent in order to give it fair effect, yet any ambiguity or fair, reasonable, substantial doubt as to the extent of the power is to be determined in favor of the state or general public, and against the state's grantee. * * * The rule of strict construction does not apply to the mode adopted by the municipality to carry into effect powers expressly or plainly granted, where the mode is not limited or prescribed by the Legislature, and is

left to the municipal authorities. In such a case the usual test of the validity of the act of a municipal body is whether it is reasonable, and there is no presumption against the municipal action in such cases."

[4] The power given by the Legislature in article 523 is very great. It does not say that the erection of fireproof buildings may be required within the fire limits, but that the use of fireproof materials may be required. While the use of fireproof materials would create a fireproof building, yet it appears to us that the expression "fireproof materials," in the sense in which it is used, evidences the intention of the Legislature to give a broad power with reference to prescribing the materials, a power including the right to designate the particular materials, provided such designation is reasonable and based upon substantial grounds. According to appellees' contention, the only ordinance which could be enacted under said article would be one requiring the use of fireproof material, for instance, that the building be erected of fireproof material. Such an ordinance, while valid (see Chimene v. Baker, 32 Tex. Civ. App. 522, 75 S. W. 330), would not be calculated to accomplish the best results. We are of the opinion that the right to designate materials is fairly implied in the power to require buildings to be constructed of fireproof materials, and that the city council did not exceed its power in enacting the ordinance in question.

[5-7] In the case of City of Austin v. Cemetery Association, 87 Tex. 330, 28 S. W. 528, 47 Am. St. Rep. 114, it was held that an ordinance prohibiting burial in any cemetery within the city limits north of the Colorado river, except in three named cemeteries, was authorized by a provision of the charter authorizing the city "to regulate the burial of the dead and to prohibit public funerals in cases of death from contagious or infectious disease; to purchase, establish and regulate one or more cemeteries within or without the city limits." The court held that the power to regulate included not only the power of prescribing the manner in which it shall be done, but may also embrace the time and place of doing it. It was also held that, unless a charter contains an express power to enact an arbitrary and unreasonable ordinance, it should be held that it was not the intention to confer authority to enact such an ordinance; also, that, where the unreasonableness of an ordinance is relied upon to have it declared void, it is incumbent upon the party alleging its invalidity to aver and prove the facts which made it so, and, if the facts be controverted, they must be determined by a jury, but whether such facts are sufficient to show the ordinance to be unreasonable is a question for the court. See, also, M., K. & T. Ry. v. Matherly, 35 Tex. Civ. App. 604, 81 S. W. 589. In the case of H. & T. C. Ry. v. Dallas, 98 Tex. 396,

84 S. W. 648, 70 L. R. A. 850, the court says: "In the case before us we have only a municipal ordinance to deal with, and it is the well-established doctrine in this and other courts that the question as to the reasonableness or unreasonableness of such ordinances is open to inquiry in the courts. Milliken v. City Council, 54 Tex. 388 [38 Am. Rep. 629]; Mills v. Railway, 94 Tex. 247 [59 S. W. 874, 55 L. R. A. 497]. The exception to this rule is that the reasonableness vel non of an ordinance cannot be thus questioned if it be expressly authorized by the Legislature, and be a regulation which the Legislature itself has power to adopt and enforce. * * * The reasonableness or unreasonableness of many ordinances will appear on their faces, and the court may, upon mere inspection, pronounce them to be valid or invalid. In others the question may depend upon their operation upon particular persons or conditions of fact which cannot be known to the court until made to appear by evidence. Their effect may be just and reasonable in general, but in particular instances may be arbitrary and oppressive to the extent of invading fundamental rights. Evison v. Chicago, St. P., M. & O. Ry. Co., 45 Minn. 370, 48 N. W. 6, 11 L. R. A. 436; Trenton Horse R. Co. v. Inhabitants of City of Trenton, 53 N. J. Law, 132, 20 Atl. 1076, 11 L. R. A. 412. In such cases the court can only determine as to the validity or invalidity of the ordinance when the facts upon which the question depends are established; and, if they are in dispute, they are to be determined like other matters of fact, the question of validity still being one of law for the court to decide. When the case is tried by a jury, the court is, of course, to instruct as to the law applicable to the differing states of fact which the evidence may tend to establish as in other cases. The court in this case, looking at the ordinance alone, could not say that it is void. As was said by the Supreme Court of Minnesota, in the Evison Case, supra: "Much must be left to the judgment and discretion of the city council, and, when they have exercised their judgment and discretion in passing an ordinance, it is prima facie valid, and, to justify a court in setting aside their action, its unreasonableness and the want of necessity for it as a measure for the protection of life and property must be clear, manifest, and undoubted, so as to amount, not to a fair exercise, but an abuse, of discretion, or a mere arbitrary exercise of the power of the council [citing Knobloch v. Chicago, M. & St. P. R. Co., 31 Minn. 402, 18 N. W. 106]. But, where it clearly and manifestly appears that the ordinance is unnecessary and unreasonable, the courts have the undoubted right to declare it void."

[8] In this case the defendants do not plead that the ordinance is unreasonable, but plead that the material used by them was in fact

fireproof, and such as is commonly known as fireproof, and the court concluded that it was fireproof material; that is, such material as would exclude or resist ordinary fires. If this be held a sufficient plea of facts showing the invalidity of the ordinance on the ground of unreasonableness, which we doubt, then we say that we are compelled to disagree with the learned trial court in regard to the conclusion that the building was built out of fireproof materials. His findings of fact show the character of the building. The undisputed evidence shows that when a fire originates on the inside of such a building, and burns the wooden uprights, the building will collapse, also that heat has the effect of making the galvanized iron curl up. Whether the iron curls up, when the building is subjected to a fire from the outside, before it gets hot enough to ignite the wooden uprights, or whether such uprights be ignited through the iron becoming very hot and before it curls, in either event the building would soon be destroyed. Besides, some of the contents of such building might be ignited much easier than the wooden uprights, and thus start a fire on the inside. It is in evidence that the building in question will affect the rate of insurance on adjoining buildings more than would a brick building. While it is true that the supports for the roof would be the same as in a brick building, yet in case of fire from the inside the roof would fall between the walls of the brick building and the fire be confined to that extent, while in an ironclad the walls themselves would be destroyed by the burning of the uprights and the fall of the sheet iron or its rolling up. A wall having its existence by reason of a wooden frame cannot be said to be made of fireproof material.

[9] We think the ordinance was reasonable and that the discrimination against materials used by appellees was based upon sound reason and was not arbitrary, nor did it wrongfully destroy any property rights.

[10] As we understand the rule laid down in Railway v. Dallas, supra, where an ordinance is not unreasonable on its face, the question may depend upon its operation upon particular conditions of fact, and its effect may be just and reasonable in general, but arbitrary and oppressive in a particular instance. Brick, stone, and concrete are generally recognized in towns of the size of Brenham as the materials out of which fireproof walls are to be constructed. If a material should be invented which would be equally as fireproof when considered from every aspect as either of such materials, a person building a house out of same, or the manufacturer of same, might well urge the unreasonableness of the ordinance in question when directed against the use of his material, and claim that said ordinance invaded his rights of property. In this case we are met by no such condition.

We hold that the city council did not exceed the authority conferred by statute in enacting said ordinance, and that the facts of this case fail to show that it was unreasonable, arbitrary, or an unjustifiable invasion of property rights.

The judgment of the lower court is reversed and here rendered for appellant, awarding it a mandatory injunction requiring appellees to take down and remove the building in question, and it is ordered that the district court pass such orders and issue such writs as may be necessary to carry into effect the judgment rendered by this court. This disposition of the case makes it unnecessary to pass upon the other assignments of error.

Judgment reversed and rendered.

### On Motion for Rehearing.

[11] Appellees in their motion for rehearing call our attention to the fact that the judgment rendered by this court is that they be required to take down and remove the building in question, while the foundation thereof, being of brick, and the roof, being of metal, comply with the ordinance. This point is well taken. The walls only are in violation of the ordinance, and the motion is granted to the extent that the judgment heretofore entered by this court will be reformed so as to award appellant a mandatory injunction requiring appellees to take down and remove the walls of the building in question, otherwise the judgment to be as originally entered. In all other respects the motion for rehearing is overruled.